520

20880.   ATLANTIC COAST LINE RAILROAD COMPANY *v.*
HOGREFE.

DECIDED JULY 14, 1931.

*W. K. Miller,* for plaintiff in error.   *W. Inman Curry,* contra.

LUKE, J.   This being the third appearance of this case in this court, we shall go into it somewhat more fully than has heretofore been done.   See *A. C. L. R. Co.* v. *Hogrefe,* 37 *Ga. App.* 636 (141 S. E. 214), and 39 *Ga. App.* 400 (147 S. E. 397).   On the last trial of the case the verdict was in favor of the plaintiff.   The first question presented for decision is whether the trial judge erred in overruling the demurrers to the petition; and the other matters for our consideration are raised by an exception to the judgment overruling the defendant's motion for a new trial.

Charles W. Hogrefe brought his petition in the city court of Richmond county against the Atlantic Coast Line Railroad Company, alleging, in substance:   1.   That petitioner is a resident

of Richmond county, Ga. 2. That defendant is indebted to petitioner in the sum of $125, together with interest from December 3, 1921, at the rate of seven per cent per annum. 3. That on December 3, 1921, petitioner shipped to M. F. Dantzler, at Eutawville, S. C., four boxes of batteries. 4. That although defendant contracted to deliver said batteries to said Dantzler in good condition, the same were damaged in transit in the sum of $125. 5. "That the said damage to said batteries was concealed at the time of delivery, but was discovered and ascertained immediately upon opening the boxes in which they were crated, and the defendant company was notified at once about said damage, and a claim was immediately filed with said company for said damage." 6. "That the defendant has failed and refused to settle said claim, and was in bad faith in so refusing." 7. "That the said company is liable to the $50 penalty under section G. S. 1912 of South Carolina." "Wherefore, petitioner prays that process do issue . . and that petitioner do have judgment against said defendant in the sum of $125, besides $50 penalty, interest, and cost of court."

On May 23, 1922, the defendant filed substantially the following demurrer to the petition: 1. No cause of action set forth. 2. No right of action in petitioner. 3. No copy contract under which petitioner sues, and under which he alleges the defendant contracted to deliver the batteries in good condition, is attached to the petition. 4. Shipment in question being an interstate contract, petitioner is not entitled to recover penalty claimed in paragraph 7 of the petition. 5. "Defendant demurs especially to paragraph 5 of the petition, because the time and place of delivery of the batteries in question is not alleged, nor the time when notice of claim referred to was filed with the defendant company, nor is a copy of such notice attached."

By amendment allowed March 28, 1924, petitioner alleged, that "in addition to the verbal notice given to the defendant's agent, plaintiff gave written notice to the defendant in January, 1921, and again on March 8, 1921, of his claim as set out in the original petition;" that "the consignee removed the shipment from the depot at Eutawville, S. C., about 3 o'clock in the afternoon of the 8th day of December, 1921;" that "as soon as he discovered that the batteries were damaged to such an extent that they were absolutely worthless, he verbally communicated this fact to the agent

of the A. C. L. R. who delivered the shipment to him, and requested the said agent to examine the said shipment;" that "said agent did examine said shipment several days later;" and "that on account of the shipment being in said damaged condition, the said consignee, with the consent of the consignor, rescinded the contract of sale, and the goods were thrown back on the hands of the consignor, and the consignor suffered the entire loss from the damage of said goods." On January 3, 1924, petitioner further amended his petition by attaching thereto as exhibit "A" a copy of the bill of lading under which the shipment was made, and by averring that said batteries were delivered to M. F. Dantzler at Eutawville, S. C., on December 8, 1921, about 3 o'clock p. m., and that as soon as Dantzler opened the shipment and saw that the batteries had been damaged, he notified the defendant's agent of that fact.

The defendant further demurred as follows: "Plaintiff having amended his petition, defendant renews its demurrer to the petition so amended, and further demurs because there is no right of action in plaintiff; it appearing . . that he sold and delivered the goods in question to consignee, M. F. Dantzler, delivery being made to consignee by delivering same to defendant railway for carriage from Augusta, Ga., to Eutawville, S. C., and that the goods so delivered were carried by defendant railway to destination and delivered to consignee Dantzler, who received the same from defendant carrier, December 8, 1921; that this delivery ended defendant's liability; . . that subsequently Dantzler verbally informed defendant's agent at Eutawville, S. C., that the goods had been damaged in transit. And defendant says that any right of action for said damage in transit is in consignee Dantzler under the laws of Georgia (*Colfax Gin Co.* v. *Buckeye Cotton-Oil Co.,* 24 *Ga. App.* 610, 101 S. E. 697), and that plaintiff . . can not sue therefor nor acquire such right of action by rescinding the sale made to Dantzler after the damage; that as no written notice was given defendant of said damage by Dantzler, consignee, as required by bill of lading attached to petition, under which goods were carried and suit brought," no right of action accrued.

On March 27, 1924, the court overruled the defendant's demurrers. In *A. C. L. R. Co.* v. *Hogrefe,* 37 *Ga. App.* 636 (supra), this court held, under the ruling in the case of *S., F. & W. Ry. Co.* v. *Commercial Guano Co.,* 103 *Ga.* 590, 593 (30 S. E. 555),

that "the consignor in the instant case had the right to bring the suit against the defendant carrier, and the demurrer to the petition was properly overruled." We will also state here that the judgment in the case was reversed because the evidence did not comport with the following rule of law announced in the case of *Southern Express Co.* v. *Bass,* 24 *Ga. App.* 742 (102 S. E. 168) : "Where in a suit by a shipper against a common carrier for loss or damage to goods in transit it appears from the evidence that some of the goods were not totally damaged or destroyed, but were of some value, and the evidence fails to furnish sufficient data from which a jury might infer the value of the damaged articles, the verdict (covering damages for all articles in the shipment, whether totally or partially destroyed) is without evidence to support it."

On June 18, 1928, the petitioner again amended his petition by alleging "that plaintiff immediately filed his claim with defendant for said loss, and the defendant refused to pay the same, and has continued in his refusal up to the present time, and by reason thereof plaintiff has had the amount of said claim wrongfully withheld from him, and by reason thereof has been damaged in an additional sum of $56." On the same date the petitioner further amended his petition by alleging that the damage to said batteries was caused by the "rough handling of said batteries" by defendant, and that the damage to said batteries occurred between the city of Augusta, Ga., and the town of Eutawville, S. C. The defendant then filed this demurrer: "Plaintiff having amended his petition at the conclusion of the evidence, showing delivery to the consignee, defendant renews its demurrer to the petition as amended, and further demurs because plaintiff fails to specify the acts of negligence in transit upon which he relies for a recovery in paragraph 4 of the petition. And defendant also demurs to the amendment as presenting no legal claim for the $56 mentioned." The defendant next demurred as follows: "Plaintiff having further amended by alleging rough handling by the railroad as negligence, defendant renews its demurrer to the petition as amended, and demurs further because the plaintiff fails to allege when and where the rough handling occurred." The next demurrer follows: "Plaintiff having further amended by alleging that the rough handling was between Augusta, Ga., and Eutawville, S. C., defendant demurs because plaintiff's allegations are too vague and uncertain, and be-

cause, having selected carriage by ordinary freight-trains, fails to allege that the rough handling referred to was not such as is usually incident to freight transportation."

On June 18, 1928, the court overruled these demurrers. To this ruling the defendant filed exceptions pendente lite, reciting that, "plaintiff having materially amended his petition on April 24, 1930, and defendant having renewed its demurrer to the petition as amended, and the court having by order of that date overruled all of defendant's demurrers to plaintiff's petition as amended," the defendant excepts, etc.

We do not think that the amendments referred to were material ones. We are of the opinion that the demurrer was substantially decided adversely to the contentions of plaintiff in error by the prior decisions of this court; and we hold that the court did not err in overruling the defendant's demurrers. In *A. C. L. R. Co.* v. *Hogrefe*, 39 *Ga. App.* 400 (supra), this court held: "The court did not err in overruling the demurrers to the petition." The judgment was there reversed because the court refused to allow the defendant's counsel to open and conclude the argument.

The original answer of the defendant was tantamount to a denial of the material allegations of the petition. The answer further averred that the defendant "carried and delivered to consignee, Dantzler, at Eutawville, S. C., the box received from plaintiff in the same condition in which it was received," and that "if the contents of box were injured, the same were not properly prepared for shipment, nor properly packed."

On June 18, 1928, defendant amended its original answer substantially as follows: 1. Said batteries were not damaged in transit, "were not in good order when received, but in bad order," and that "this condition was not disclosed by plaintiff until said trial." 2. "Defendant carried the boxes of batteries by ordinary freight-cars and train—the way selected by plaintiff, and delivered them to consignee Dantzler in the same condition as received. They were not marked glass, and were transported in the usual and ordinary way, as agreed upon, and without any negligence by defendant." 3. "That the batteries had so deteriorated from their age and conditions of manufacture that they had practically ceased to be batteries, were not tested by plaintiff at time of shipment, and would not stand ordinary freight transportation; and if

injured in such carriage—which defendant denies—it was from no negligent action of defendant, but from the condition of the shipment itself." 4. "That after delivery of the batteries to consignee Dantzler, who receipted for them as in good order, they were removed by him from the premises of defendant and never returned to defendant; nor did Dantzler, consignee, ever give defendant any written notice of any damage claimed." 5. Said batteries were valueless at the time of shipment, had not been seen nor examined by consignee before shipment, and when seen by him he found that they were old batteries, and would not accept them. 6. That plaintiff made no effort to replace the few glass jars claimed to be broken, or to replace the broken battery plates, if any, and did not try to sell shipment in its damaged condition, but abandoned it to Dantzler, and brought suit as for destruction of good batteries, when he knew all the batteries in the four boxes had not been destroyed in shipment, but that they had deteriorated in value before shipment: "and defendant says that it was misled by plaintiff into accepting a shipment that it would not have accepted as in apparent good order if the true deteriorated condition of the property had been made known to it by plaintiff at the time of the shipment.". 7. That if the batteries were negligently damaged in transit, the defendant is only liable for the value of the damaged parts, and that these damaged parts do not exceed the value of $10. "The boxes in which the shipment was contained were not broken, but delivered in the same condition as received."

■ Charles W. Hogrefe testified, in substance, that in December, 1921, he sold H. F. Dantzler fourteen storage batteries; that he and Carl R. Hogrefe carefully and properly packed said batteries in excelsior in wooden boxes and shipped them over the Atlantic Coast Line Railroad from Augusta, Ga., to Dantzler, in Eutawville, S. C.; that said batteries had never been used, but had been in storage for about a year and a half, and that, by reason of having been kept for that length of time, the life of the batteries was probably shortened a year; that had said batteries been perfectly new and shipped directly from the factory, they would have been worth $200, but that, having been kept in storage as they were, he sold them to Dantzler for $125, which was their true value; that after the batteries had been packed as stated, witness and his

son carried them at a fairly slow rate of speed a very short distance to the A. C. L. Railroad depot, and that they "received no unusual jerk or jar" in being so conveyed; that Dantzler did not pay for the batteries after receiving them in Eutawville, but complained to witness of their condition; that fifteen or twenty days after said shipment was made, witness went to Dantzler's place at Eutawville and "found that some of the glass jars, some of the batteries, some of the plates in the batteries, and some of the boxes which contained the batteries were broken;" that witness reported the matter to defendant's agent and he came and looked at the batteries in witness' presence; that there were probably two or three of these batteries in good order when received by Dantzler, but that batteries formed a unit, "and could not be used for anything but junk unless you got other batteries to complete the unit, and it would cost about $15 per battery to purchase the other batteries to complete the unit;" that Eutawville was a place of about 250 to 300 inhabitants; that witness was familiar with the territory around said town, and there was no market in that vicinity for junk of that character; that at that time witness was familiar with the value of junk in connection with storage batteries; that the junk that might be of value was the unbroken jars and lead, and that the other material was of no value, even as junk; that the nearest market for the lead was Atlanta, Ga., and that the batteries contained about fifty pounds of lead which was probably worth four or five cents "at a place where there was a market for it;" that "there were about six unbroken jars," and the nearest market for them known to witness was Chicago; that the purchase-price of these jars was probably $4 or $5, "but when you got to sell them back as junk, after paying freight, you would probably not get more than fifty cents for them;" that "the only value you could get out of the three batteries that were unbroken would be to buy eleven more such batteries to complete the unit, which could be secured at a cost of $12 to $15 apiece, making the cost more than the original" that the witness sold Dantzler; that "if the junk could have been sold at Eutawville it would have been worth $8 or $10, and would have brought about the same thing at any place where there was a market for it, less the freight from Eutawville;" that if the junk had been shipped to the nearest market, the expense of packing would have also entered into the transaction.

Here was introduced a letter, dated January 20, 1922, at Augusta, Ga., from "J. J. McKellar, agent," to plaintiff in the trial court, wherein McKellar wrote that papers had been returned to him "by the freight-claim agent, with instructions to decline claim in view of the fact that . . agent Eutawville advises this shipment was delivered . . on December 8, 1921, without exception, and that he was not advised of any damage to the shipment until December 21, at which time Mr. Dantzler called him, requesting that he make examination of shipment and exception," which he declined to do. The letter concluded: "Your claim is therefore respectfully declined."

The witness Charles W. Hogrefe further swore on direct examination: "The damage to the batteries was not disclosed until the boxes in which they were contained had been opened. The railroad has not paid this claim, and have persisted in their refusal to pay since the receipt of the above letter. They returned all the claims to me, which was the last direct dealings I had with them. I consider eight per cent. interest is a reasonable rate of interest for being kept out of the money I would have received for these batteries, as . . I would have to pay that rate at the bank." On cross-examination this witness testified, that he "did not try to sell the damaged batteries or the junk to anyone at Eutawville, S. C., or the glass jars that were unbroken, or the uninjured batteries;" that witness Dantzler received the batteries about December 8; witness saw them about December 21; witness left the batteries with Dantzler, waiting to hear from the railroad; that Dantzler had opened some of the boxes and found the batteries broken, and didn't open the others, which were unopened when witness reached Eutawville; that the battery jars were filled with fluid, but that this fluid was absorbed by the excelsior in which the batteries were packed, and that there were no signs of leakage outside the boxes. The witness concluded his testimony on cross-examination as follows: "The batteries were absolutely intact when delivered at the depot of the Atlantic Coast Line Railroad, because I know how they were packed and handled, and they couldn't have broken before delivery. . . I think it was four boxes that I packed the batteries in. My opinion is that the batteries were in perfect condition when delivered to the A. C. L. Railroad. After being packed, the batteries traveled some seven

or eight city blocks in my automobile before being delivered to the railroad. It is approximately one hundred miles from Augusta to Eutawville, and it is just about one of our city blocks from the railroad depot to Mr. Dantzler's place."

Carl Hogrefe, sworn for the plaintiff, testified: that he recalled the sale of said batteries to Dantzler on December 8, 1921; that he assisted in packing said batteries in excelsior in regular battery-boxes, and helped deliver them to defendant's depot in Augusta; and that when packed and shipped the batteries "were in good condition." M. F. Dantzler, sworn for the plaintiff, testified: "I reside at Eutawville, S. C. I purchased fourteen batteries and one generator from Mr. Charles W. Hogrefe on or about Dec. 8, 1921, which were shipped me by freight over the A. C. L. Railroad Company. When I received the batteries, they were damaged beyond repair. . . I could not ascertain their condition before they left the depot and before I signed a receipt for them. I did not accept the articles from Mr. Hogrefe or pay for them. Owing to the condition of the batteries I was not to pay for them. I was to pay him $125 for the fourteen batteries, . . but after they were received in their damaged condition, they were worth nothing to me. The agent for the railroad examined part of the shipment about twenty-four hours after I notified him, and the balance later. . . My business was running a garage. . . I am not an electrician. My order for the batteries was a verbal one. . . The batteries . . were in glass jars. Both the plates and jars were damaged. The batteries were to be used to light my home and garage. I did not see the batteries before I purchased them. When the railroad company's agent delivered the articles to me, I gave him a receipt for them as being delivered in good order. A Ford truck was used in delivering the batteries to me from the railroad depot. I hardly think they could have been broken in transferring them to my place, as they were only hauled one block. I did not unpack all of the packages containing these different batteries. I unpacked two and Mr. Hogrefe unpacked the balance." Charles W. Hogrefe, recalled for further cross-examination, swore: "I did not attempt at the time I sold the batteries to electrically charge them." On redirect examination this witness testified: "It would not have been proper to have charged the batteries before shipping after they had been stored that length of time. They would be recharged at Eutawville before being used."

It appears from the bill of lading that four boxes of batteries and one generator were received by the railroad in Augusta, Ga., December 3, 1921, from Charles W. Hogrefe, consigned to M. F. Dantzler at Eutawville, S. C., "in apparent good order, except as noted (contents and condition of contents of packages unknown)."

The first three grounds of the original motion for a new trial are the usual general grounds, and many of the other grounds are but elaborations of these grounds. We shall consider the grounds in order, beginning with ground 4 of the original motion, which complains that the verdict is excessive. Since all that the bill of exceptions shows as to the verdict is that the trial "resulted ·in a verdict for the plaintiff," without indicating in what amount, and since the verdict is not specified as a part of the record, this ground should perhaps not be considered. This language occurs at the beginning of the motion for a new trial: "Verdict and judgment for plaintiff, at April term, 1930, of city court, on April 24, 1930, for $125 and interest." However, since special ground 11 is similar to the ground under consideration, and since in that special ground it is averred that the verdict was "for $190—less salvage $10—$180," we prefer to pass upon both of these grounds at this time. Special ground 11 complains that the verdict was "unauthorized under the interstate-commerce law of the United States." Under the rule that in a case like this the jury may, under proper circumstances, increase the amount of the recovery by adding interest thereto, provided the verdict is for an aggregate sum, we think that the verdict is authorized, and that it is not excessive. For a statement of the rule referred to, see: *Maryland Casualty Co.* v. *Lanham,* 124 *Ga.* 859 (4) (53 S. E. 395); *Central of Ga. Ry. Co.* v. *Hall,* 124 *Ga.* 322 (12) (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170, 4 Ann. Cas. 128); *So. Ry. Co.* v. *Groover,* 41 *Ga. App.* 746 (5) (154 S. E. 706).

Ground 5 of the original motion for a new trial, complaining that the "verdict is contrary to the charge of the court," is but a reiteration that "the verdict is contrary to law," and needs no consideration apart from the usual general grounds. *Luke* v. *Ashburn Bank,* 40 *Ga. App.* 802 (4), 806 (151 S. E. 562).

Ground 6 of the original motion for a new trial is: "Because there is no evidence of the market value of the batteries at time and place of destination at Eutawville, S. C., December 8, 1921."

There being testimony that the articles in question had no market value in Eutawville, and that the nearest markets were Atlanta and Chicago, and that the expense of packing and shipping the junk to those places would have been more than could have been gotten for it in those markets, and it appearing that the jury did place a small value on the junk in fixing their verdict, we hold that there is no merit in this ground.

In ground 7 it is contended that the defendant was not liable because it "fully performed its contract of interstate transportation." This ground states: "The contract sued on was a straight bill of lading to Dantzler, consignee. By it the carrier never acknowledged the receipt of four boxes of batteries 'in good order' as alleged, but 'in apparent good order, except as noted, contents and conditions of contents of packages unknown.'" In our opinion the jury had the right, under the evidence in the case, to solve the foregoing question in favor of the plaintiff below. This court has already held that Hogrefe, the consignor, had a right, under the pleadings, to bring the action (37 Ga. App. 636). In our opinion he also had this right under the evidence adduced at the trial, and there is no merit in the contention in this ground that he did not.

Ground 8 complains that "plaintiff failed to show any negligence in transit by defendant—but just the contrary." We purposely set out the contents of the brief of evidence rather fully in order to avoid repetition. A careful reading of the evidence satisfies this court that this ground is without merit.

In ground 9 it is contended that, under the evidence adduced upon the trial of the case, the verdict was not warranted under the following rule of law applied in this case in 37 Ga. App. 636 (2) : "Where in a suit by a shipper against a common carrier for loss or damage to goods in transit it appears from the evidence that some of the goods were not totally damaged or destroyed, but were of some value, and the evidence fails to furnish sufficient data from which a jury might infer the value of the damaged articles, the verdict (covering damages for all articles in the shipment whether totally or partially destroyed) is without evidence to support it." In our opinion, the evidence supports the verdict for the plaintiff for $190, less $10 salvage. Therefore we hold that this ground is not meritorious.

Ground 10 avers that "the verdict is without pleadings to sup-

port it," for the reason that "there were no allegations of pleadings as to salvage by Hogrefe of the value of what plaintiff took from the shipment, and there was no such issue submitted to the jury by the court in its charge." The matter of salvage appears to have been brought into the case by the evidence. See discussion of previous ground. We hold that this ground is without merit.

Ground 11, complaining that "the verdict for $190—less salvage $10—$180 was unauthorized," is without merit. See ground 4, supra.

Ground 12 complains that Hogrefe did not attempt to lessen the damage, "as by the purchase of new glass jars and new plates" with which to repair the batteries. In our opinion, the jury had a right to conclude, from the evidence, that the damages could not have been lessened in this manner. Furthermore, it appearing that the jury did allow for the greatest proved value of the salvage, we see no merit in this ground. In short, the ground does not show injury to the plaintiff in error for any reason alleged therein.

■ Ground 13 avers that the court erred in permitting Hogrefe to testify as follows: "My opinion is that the batteries were in perfect condition when delivered to the Atlantic Coast Line Railroad. After being packed, the batteries only traveled some seven or eight city blocks in my automobile before being delivered to the railroad. It is approximately a hundred miles from Augusta to Eutawville, and it is just about one of our city blocks from the railroad depot there to Mr. Dantzler's place." The objection was: "It is just a matter of speculation by the witness. The issue on trial in this case is damage in transit from Augusta, Ga., to Eutawville, S. C., and I object to any testimony that undertakes to express the opinion of the witness as to what damage took place, or did not take place, anywhere else, except in transit by the railroad company." The question which elicited the foregoing answer was this: "Based upon those facts that you have testified to the jury, what is your opinion about the condition of those batteries when they reached the depot and were turned over to the Atlantic Coast Line Railroad?" The witness having testified in substance that he packed the batteries properly in excelsior in battery boxes, and carefully took them to the depot, a distance of only about seven or eight city blocks, we see no merit in the objection. Furthermore, Carl Hogrefe had already testified substantially as did Charles W.

Hogrefe, without objection. It might also be observed that M. F. Dantzler, referring to the conveying of the batteries from defendant's depot in Eutawville to his place, testified, without objection, as follows: "I hardly think they could have been broken in transferring them to my place, as they were only hauled one block." We hold that this ground discloses no reversible error.

■ Ground 14 complains that the court refused to exclude the testimony of Charles W. Hogrefe that "there was no market for junk at Eutawville, as the witness had testified that he made no effort to sell it there, and such was merely his conclusion." The witness having testified that he was familiar with the territory around Eutawville, and that there was no market value in that vicinity, and such testimony being to a fact, we do not think that the testimony was objectionable as a mere conclusion because the witness swore also that he did not try to sell the "damaged batteries or the junk to any one at Eutawville." We see no force in the further objection that "there is no allegation of this kind in the petition." We hold that this ground is without merit.

■ Ground 15 complains of the court's refusal to charge the jury as follows: "It being conceded by plaintiff that the railroad carried and delivered to the consignee . . the Federal shipment involved in this case from Augusta, Ga., to Eutawville, S. C., and that Dantzler, consignee, received and receipted for the same as in good order, and removed the shipment from the premises of the railroad carrier to his own premises, and never returned it, I charge you that by such carriage and delivery the railroad company complied with its transportation contract as made with plaintiff." The court charged the jury in accordance with the law of the case as fixed by this court in 37 *Ga. App.* 636 (supra); and, in our opinion, the requested charge does not comport with the law laid down in that decision.

■ Ground 16 complains that the court refused to charge as follows: "I charge you that after it is admitted that the railroad carried and delivered the box containing batteries in apparent good condition to consignee Dantzler, there is no presumption against the company that it was negligent in such carriage and delivery. The burden of proof is upon Hogrefe to prove by the preponderance of evidence acts of negligence by defendant in transit that caused the injury. No such negligence will be presumed to exist as

against the railroad—Hogrefe must prove it." The court charged the jury that "the plaintiff must prove by a preponderance of the evidence that these batteries were damaged as a result of the negligence of the railroad," and otherwise charged correctly the law of the case. We hold that this ground does not disclose reversible error.

■ Ground 17 complains that the court erred in charging as follows: "If you find, from the evidence in the case, and are satisfied by a preponderance of the evidence, that the batteries were in good condition when they were received from Mr. Hogrefe here in Augusta, and they were injured while in transit as a result of the negligence of the defendant railroad, then I charge you that your verdict should be for the plaintiff." The contention of counsel is as follows: "The court erred in raising such question as to the 'condition' of the shipment 'when received' by the railroad, when such was not the justiciable issue upon which the suit was based,—which was, that defendant · had negligently damaged the shipment in transit. The condition of the shipment had been agreed on by the carrier and the shipper when received, and such had been inserted in the bill of lading as 'four boxes of batteries in apparent good order—contents and condition of contents unknown.'" The charge certainly presented the "justiciable issue" that the defendant had negligently damaged the shipment in transit, and we do not think that the stipulation in the bill of lading irrevocably fixed the condition of the batteries when delivered to the carrier, or prevented the consignor from showing that the batteries were in good condition when so delivered. We hold that there is no merit in this ground.

■ The court charged the law of the case in accordance with the prior decision of this court (37 *Ga. App.* 636), and did not err, as alleged in ground 18, "in failing to charge the jury the law of the case as to when defendant's liability as carrier terminated as by delivery of the shipment to the consignee."

■ Ground 19 complains that the court failed (without request) to charge the measure of damages, to wit, "the actual loss or damage to the property at destination." It is further alleged in this ground that the court "failed to so charge, or to give any correct instruction whatever on the law as to the measure of damages." The court charged the jury: "It is the contention of

the plaintiff . . that when he delivered those batteries to the defendant railroad at Augusta, Ga., that they were in good condition, and that when the batteries were delivered to Mr. Dantzler in Eutawville they were in such a damaged condition that Mr. Dantzler . . declined to accept them, and that the damaged condition was due to the negligence of the railroad, and that by reason of the fact that the batteries were damaged through the negligence of the defendant railroad, as alleged by the plaintiff, he has been injured and damaged in the amount claimed in the petition." The court further charged that if the batteries were injured in transit as a result of the negligence of the defendant, "your verdict should be for the plaintiff:" and also: "If you find that the plaintiff . . is entitled to recover, he can recover only an amount to the extent of the damages to the batteries."

Considering the charge as a whole, we do not see how the jury could have reasonably reached any other conclusion than that the measure of damages was "the actual loss or damage to the property at destination." We do not see that any harm was done the defendant by the court's failure to employ the language set out in this ground; and, furthermore, there was no request for any more specific charge in the regard indicated. See, in this connection, *Briesenick* v. *Dimond,* 35 *Ga. App.* 668 (5) (134 S. E. 350), and cit.

■ We quote from ground 20: "Because the court erred in failing to charge the jury the Federal law of the case governing the liability of the interstate carrier for carriage of goods packed by shipper-consignor where the condition of the goods so packed by shipper were accepted for interstate carriage as 'in apparent good order, except as noted, contents and condition of contents of packages unknown.' Defendant contends that under the bill-of-lading act of Congress, 1916, U. S. C. A. title 49, § 101, that the carrier receiving goods so packed by the shipper, as was the case at bar, and carried and delivered to the consignee upon the condition stated, on a straight bill of lading, is not liable to shipper-consignor for the actual inside conditions of the undisclosed, unknown contents of such packages so packed by shipper." To have charged as stated would have been practically tantamount to directing a verdict for the defendant. To our minds it would also be counter to the principle that a carrier can not contract against its own negli-

gence. We hold that the court sufficiently charged the issues in the case, and did not err in failing to charge as suggested in this ground.

Many of the so-called special grounds being merely elaborations of the general grounds, we purposely decided them first. We now hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ This record raises one other question. After reciting that prior to the trial of April 25, 1930, which resulted in a verdict for the plaintiff, "and at the entering of the remittitur from the Court of Appeals, defendant moved in writing for a judgment for the costs expended by it in order to correct the errors of said city court against it," the bill of exceptions recites that on July 28, 1930, "the said motion . . for a judgment for costs, as paid by it to correct . . the errors of said city court against it, came on for hearing;" that the "bills of cost so required by the clerk to be paid before he would make up and forward the record to the Court of Appeals were put in evidence, to wit: $53.21, costs paid April 21, 1927, plus $15 cost in Court of Appeals—total $68.21; $66.24 cost paid September 10, 1928, plus $15 cost in Court of Appeals— total $81.24;" that "plaintiff objected to any such judgment for costs other than costs in the Court of Appeals being rendered against him;" and that "the court . . rendered judgment against Hogrefe for said costs in the Court of Appeals—only $30, and refused to render any judgment for any costs required to be paid by the clerk of the city court—transcript of record or otherwise." Did the trial judge commit error? Under the rule laid down in *Anderson* v. *Beasley,* 169 *Ga.* 720, 721 (151 S. E. 361), and cases cited, the plaintiff in error in this case was entitled to have judgment for the costs of bringing the case to this court as well as for those accruing in this court. Therefore the judgment in this case is affirmed, with direction that on the return of the remittitur to the trial court, the judge of that court enter up a judgment for costs in accordance with the rule stated. All cost of the present writ of error is taxed against the defendant in error.

*Judgment affirmed with direction. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*